[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION TO STRIKE SECOND SUBSTITUTED COMPLAINT AND MOTION FOR SANCTIONS (#140)
CT Page 10575
The plaintiffs have filed a Second Substitute Complaint dated January 13, 2000 against the defendants Micropatent, Opus Publications, Inc., Peter Tracey, Gregory R. Veilleux and William J. Dufault. The Second Substitute Complaint contains five counts. The first count alleges violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b, et seq. ("CUTPA"), The second count asserts a claim to quiet title in the so-called `001 patent.[1] The third count alleges conversion. The fourth count alleges violation of the Connecticut Trademark Act, General Statutes § 35-11j. The fifth count alleges a state law antitrust violation.
The defendants have moved to strike the first (CUTPA), fourth (trademark) and fifth (antitrust) counts. This is the third time the plaintiffs have attempted to plead the above-described causes of action. The CUTPA, trademark and antitrust violations alleged in both the original complaint and first substitute complaint were ordered stricken by the court (Silbert, J.) in two memoranda of decisions. See Memorandumof Decision Re Defendant's Motion to Strike #119, dated June 4, 1999 (hereinafter "First Decision"); Memorandum of Decision Re Motion toStrike #125, dated December 30, 1999 (hereinafter "Second Decision"). These two decisions along with the decision of the court (Fracasse, J.) in its Memorandum of Decision Re: Defendants' Motion to Dismiss #106
dated December 10, 1997, are the law of this case. Suffield Bank v.Bermen, 228 Conn. 766, 774-75 (1994). Familiarity with these three memoranda of decision is presumed and no attempt will be made here to repeat their thorough discussion of the nature of this lawsuit and the legal principles upon which the previous rulings relied.
The plaintiffs' third attempt to bring these allegations founders on the same grounds that were previously articulated by Judge Silbert. This is because the defects in these counts stem from fundamental legal problems that cannot be corrected within the jurisdictional limits of this lawsuit. These problems arise largely from the plaintiffs' decision to bring a patent-related case in state court. CT Page 10576
For the reasons set forth below, the motion to strike the first, fourth and fifth counts is granted.
 I First Count: CUTPA
The CUTPA claim in the Second Substituted Complaint is based on three predicates: conversion, operating under a fictitious name in violation of General Statutes § 35-1, and misuse of trademark in violation of General Statutes § 35-11a(1) and § 35-11j.
The problem with the conversion-based CUTPA claim is that Micropatent's right to exploit the patent is not at issue in this case. The patent in question was issued to five inventors, the three plaintiffs and the defendants Veilleux and DuFault. All five signed contracts purporting to assign their patent rights to Micropatent. The three plaintiffs challenge these assignments asserting that they were without consideration and were obtained through fraud and trickery. But the law of this case is that neither the inventorship status of Veilleux or Dufault nor their assignment to Micropatent are at issue. Memorandum of Decision Re:Defendant's Motion to Dismiss, 9. Thus Micropatent stands in the shoes of a co-inventor. The earlier decisions recognized that federal law allows such a co-inventor to commercialize the patent without having to account to other co-inventors. Second Decision, 8-9. In his December 30, 1999 decision, Judge Silbert ruled that because of this feature of federal law, the plaintiffs had failed to plead CUTPA violation based on immoral, unethical, oppressive, or unscrupulous conversion by the defendants. Id.
The present complaint does not cure this defect — nor can it. The present CUTPA count only adds allegations as to how the defendants converted the plaintiffs' ownership interest in the patent. See paragraph 25. What is lacking is a claim that Micropatent's commercial exploitation of the patent is illegal. That claim can only be made in federal court because of the exclusive jurisdiction provisions of 28 U.S.C. § 1338
(a).
The problems with the fictitious name based CUTPA claim are twofold. First, as decided earlier, the present complaint fails to allege an injury to the plaintiffs proximately caused by the defendants violation of the fictitious name statute, § 35-1. Second Decision, 7. The allegation of paragraph 26 that the use of the fictitious name was part of the defendants' scheme to unlawfully convert the plaintiffs' ownership in the patent is insufficient because, as discussed above, the conversion CT Page 10577 based CUTPA claim itself is insufficient. Second, the present complaint does not overcome the standing problem arising from the fact that §35-1 was intended to protect creditors and not employees such as the plaintiffs. Second Decision, 9.
The problem with the trademark based CUTPA claim alleged in paragraph 27 is that it is based on General Statutes § 35-11j. That statute, as previously decided in this case, protects the rights of a "registrant" of a trademark. Second Decision, 10-11. Neither in the earlier complaints nor in the present one do the plaintiffs make any allegation that they are the registrants of the "NEATO" trademark at issue. Accordingly, they lack standing to assert a violation of § 35-11j.
The motion to strike count one is granted.
 II Fourth Count: TRADEMARK
The plaintiffs have not pled that they are the "registrants" of the NEATO trademark and therefore lack standing bring an action pursuant to § 35-11j. The plaintiffs have not pled that they are the owners of the NEATO mark nor that they have exclusive right to use the "001 patent, and therefore, have not adequately pled a common law trademark cause of action.[2]
The motion to strike count four is granted.
 III Fifth Count: ANTITRUST
The basic problem with the plaintiffs' antitrust claim is that the commercial use of a valid patent is an exception to the general rule against monopolies. Walker Process Equip., Inc. v. Food Machinery Chemical Corp., 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). Indeed, private antitrust remedies are not available to reach Sherman Act § 2[3] monopolies carried on under a nonfraudulently procured patent. Id., 180 (Harlan, J. concurring). As noted above, a direct attack on the patent cannot be made in state court.
The second problem with the antitrust claim is that the fifth count contains no allegation as to the relevant product market that the defendants sought to monopolize. Is it the market for CD-ROM labels? The count does not allege that. In fact, paragraph 36 states that the defendants' acts constituted "an agreement to monopolize the plaintiffs CT Page 10578 patent and property rights . . ." This language does not adequately allege monopolization of a given product market essential to a valid antitrust claim. Nifty Foods Corp. v. Great Atlantic and Pac. Tea Co., 614 F.2d 832,840 (1980).
The motion to strike the fifth count is granted.
To summarize, because the first, fourth and fifth counts of the Second Substituted Complaint fail to remedy the defects in the two previous complaints the motion to strike them is granted.
The defendants' motion for sanctions is denied.
So ordered at New Haven, Connecticut this 16th day of August 2000.
Devlin, J.